## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| **CENTRAL CONSTRUCTION** | : | **Civil Action No. 15-7342 (ES)** |
| **MANAGEMENT, LLC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **STRONGWALL INDUSTRIES, INC.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

### I.  Introduction

This matter comes before the Court on the Motion of Defendant Strongwall Industries, Inc. to Change Venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), D.E. 4.  Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Defendant's motion to change venue and transfer this matter to the United States District Court for the Southern District of New York.

### II.  Background

The factual background is derived primarily from the untested allegations of the Complaint.  Plaintiff Central Construction Management, LLC ("Plaintiff" or "CCM"), a New York limited liability company, is a contractor that conducts "concrete and masonry repair, repointing, building envelope repair, waterproofing and balcony repair."  Compl. ¶¶ 1, 14, 16.  It was conducting concrete and masonry work at Masaryk Towers and 420 East 54th Street, both in in New York City.  *Id.* ¶¶ 14-17.  Plaintiff alleges that beginning in March 2011, Defendant Strongwall Industries, Inc. ("Defendant" or "Strongwall"), a New Jersey corporation, supplied

Plaintiff with material known as "Strongwall Single Component Repair Mortars, 90 Series" for Plaintiff's work the Masaryk Towers. *Id.* ¶¶ 18, 33. CCM alleges that the mortars are "polymer-modified concrete repair mortars[,]" and that Crossfield and other unidentified entities supplied some of the mortars to Strongwall. *See* Compl., ¶¶ 20-23. *See also id.* ¶ 24 ("Strongwall acts as a vendor and/or dealer or licensee for Crossfield with respect to the products that Strongwall sells under its own name, but which are actually manufactured or supplied by Crossfield.").

Plaintiff alleges that the mortars Strongwall supplied were defective, and that the mortars began to fail even before CCM completed work on the properties. *Id.* ¶¶ 33-36. Plaintiff alleges the failure damaged not only the Masaryk Towers and property at 420 East 54th Street, but also caused damage to other properties. *Id.* Accordingly, the Complaint sets forth the following claims: (1) Count One – strict liability; (2) Count Two – negligence; (3) Count Three -- breach of implied warranty; (4) Count Four -- breach of express warranty; (5) Count Five -- deceptive practices; (6) Count Six -- fraud, deceit, misrepresentation and conspiracy; and (7) Count Seven -- defamation. *Id.* ¶¶ 50-111.

In lieu of an Answer, Strongwall filed the instant motion to change venue pursuant to 28 U.S.C. § 1404(a) on December 22, 2015, D.E. 4.[1] On January 11, 2016, Plaintiff filed its opposition brief, and on January 26, 2016, Strongwall filed its reply brief. D.E. 7, 14. No other Defendant has appeared in this action.

---

[1] Defendant also seeks a determination that New York Law applies to this case under a choice-of-law analysis. Def. Br. in Support of Motion to Change Venue at 22, D.E. 4. However, the Court does not reach that issue because this action will be transferred to the Southern District of New York, and in deference to the transferee court.

### III.     Discussion

Section 1404(a) of Title 28 of the United States Code permits a district court "[f]or the convenience of parties and witnesses, [and] in the interest of justice" to transfer an action to another district "where it might have been brought." *Abrams v. Gen. Nutrition Cos., Inc.*, 2006 WL 2739642, at *8 (D.N.J. Sept. 26, 2006) (citing 28 U.S.C. § 1404(a)). "An action might have been brought in another district if:  (1) venue is proper in the [other] district, and (2) the [other] district can exercise [personal] jurisdiction over all the parties." *Id.* (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Thus, "[t]he first step in a court's analysis of a transfer motion is to determine whether [personal jurisdiction and] venue would be proper in the transferee district." *Marino v. Kent Line Int'l*, 2002 WL 31618496, at *2 (E.D. Pa. Nov. 20, 2002) (citing *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001)). The movant bears the burden of demonstrating that transfer is warranted. *Id.*

If the first prong of the inquiry is satisfied, the Court must then weigh a series of private and public factors to determine whether transfer is appropriate. *See Marino*, 2002 WL 31618496 at *2 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Section 1404(a) provides three factors for consideration:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. § 1404(a). In *Jumara*, the United States Court of Appeals for the Third Circuit noted that "there is no definitive formula or list of the factors" that a court must examine, and it identified private and public interest factors to be considered to determine if a case would more conveniently proceed in another venue. *See Jumara*, 55 F.3d at 879. The "private interest" factors include:  (1) plaintiff's choice of forum; (2) defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses;

and (6) the location of books and records.  *See Wallace v. Mercantile Cnty. Bank*, 2006 WL 3302490, at *3 (E.D.Pa. Nov. 9, 2006) (citing *Jumara*, 55 F.3d at 879).  The "public interest" factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty arising from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable law.  *Id.*; *see also Jumara*, 55 F.3d at 879-80.  The party seeking transfer should support its motion with affidavits and other documentation establishing that the interests of justice and convenience of the parties would best be served by a transfer.  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

### A.  Propriety of Venue in Transferee District

The first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district.  A civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

The record establishes that venue is proper in the Southern District of New York.  First, venue is appropriate pursuant to § 1391(a)(2), because a substantial part of the events giving rise to the claim occurred there, and a substantial part of the property that is at issue is located there.

The allegedly defective mortars were used at the Masaryk Towers and 420 East 54th Street in New York City, and the resultant damage Plaintiff alleges occurred there.  Indeed, Plaintiff alleges that because Stonewall supplied it with defective mortars, those properties were damaged, Plaintiff had to remove both the mortars and surrounding material, including concrete and fixtures that pre-existed installation of the mortars, from those structures.  Compl. ¶¶35-36.  Moreover, the affected buildings are located in New York City, and the allegedly defective mortars were installed and failed in the buildings in New York City.[2]

**B.     Public & Private Interest Factors**

The Court must next evaluate whether the transfer is in the interest of justice and "must consider both the private and public interests effected by the transfer."  *Jumara*, 55 F.3d at 879.

**1.     Summary of Arguments**

**a.     Defendant's arguments**

Defendant asserts that Plaintiff's preference should be given little weight because where a Plaintiff chooses a forum that is not its home state, the choice of forum should be given "considerably less weight."  Defendant's Br. in Support of Motion to Change Venue, p. 8 (citing *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 256 (1981)).   Defendant also asserts the Southern District of New York is the more convenient venue because: (1) Plaintiff is domiciled there; (2) it is where the events leading up to the instant action occurred; (3) the witnesses are located there; (4) the product became defective there; (5) the product was used there in the construction of several properties and caused damage there; (6) the removal of the product

---

[2] It also might be that venue is appropriate pursuant to § 1391(a)(3).  The Complaint alleges, and Stonewall does not dispute, that Defendants routinely conduct business and supply goods in the State of New York.  Compl. ¶¶ 4-7.  However, the Court need not reach this issue because it has concluded that venue is proper under § 1391(a)(2).

occurred there; (7) Plaintiff lost business there as a result of the defective product; (8) alleged false engineering reports were circulated there; (9) it is where public safety is at risk due to the defective product; (10) the safety inspections were done there; and (11) it is the location where the removal of the product for testing and the mockup occurred. *See id.* at 9-10.

### b.    Plaintiff's arguments

Plaintiff asserts that transfer is improper because:  (1) its choice of forum is of most importance; (2) other Defendants have not joined the motion so the Court should infer that they prefer New Jersey; (3) "the claim arose in New Jersey where the defective products were allegedly manufactured, and undeniably advertised and sold and where Strongwall took the actions and made the decisions that ultimately harmed the plaintiff;" (4) the convenience of the parties favors New Jersey because the companies, lawyers, personnel, experts, parties, witnesses and staff are all in New Jersey or closer to New Jersey; (5) witnesses and sources are in New Jersey; (6) enforceability of a judgment in New Jersey is easier because Strongwall and Crossfield have offices here, and Strongwall has assets here; and (7) Defendant has not shown that court congestion in New Jersey materially differs from that in the Southern District of New York.  *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue at 2-3, D.E. 7.

### c.    Defendants' reply

Defendant responds to Plaintiff, arguing that:  (1) the Court cannot reasonably infer anything from the other Defendants' failure to join Defendant's motion; (2) the defective product was neither manufactured nor advertised in New Jersey as Plaintiff suggests; (3) the consideration of what is more convenient for the companies, lawyers and experts is inappropriate because they are not parties to this action; (4)  the location of the witnesses in this matter favors

New York as there are at least 15 enumerated witnesses who reside in New York and who may be subjected to subpoenas in New York; and (5) the local interest is greater in New York because "the residents of the State of New York have a stake in this outcome as the product was placed in the State of New York; sold to a New York resident; the alleged injury and public safety threat occurred in New York."  *See* Defendant's Reply Brief at 4-6, D.E. 14.

> 2. **Analysis**

> > a. **Where the claims arose**

In the instant motion, the parties vigorously dispute where the claims arose.  Plaintiff argues that the claim arose in New Jersey because the alleged defective product was manufactured, advertised and sold here.  Defendant argues that New York is where the claim arose because it is where:  (1)  all of the events leading to the instant litigation occurred; (2) the product allegedly became defective; (3) the properties on which the product was used are located, and where the alleged damage to those properties occurred; (4) the alleged loss of business to Plaintiff and damage to its reputation occurred; (5) the alleged circulation of engineering reports occurred; (6) the site inspections occurred; (7) the potential danger to public safety is located; and (8) where the parties' business relationship commenced.  In addition, Defendant maintains that the product at issue was not manufactured, advertised or sold in New Jersey.

The Court determines where the claims arose by inquiring into where the allegedly culpable conduct occurred.  "The 'locus of the alleged culpable conduct' determines the place where the claim arose."  *Allied Old English, Inc. v. Uwajimaya, Inc.*, 2012 WL 3564172, at *4 (D.N.J. Aug. 16, 2012) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988)).  With respect to product liability actions, the locus of the alleged culpable conduct is where the

allegedly defective product was designed, manufactured, marketed, and/or distributed.  *Cromar v. Johnson & Johnson*, No. 06-1867, 2006 WL 3313955 at *4 (D.N.J. Nov. 13, 2006).

After analyzing the nature and basis for CCM's Complaint, the Court concludes that this factor weighs in favor of transfer, albeit to a limited degree.  The parties' briefing does not explain where the allegedly defective product was designed, manufactured, or advertised.[3] However, Defendant steadfastly maintains that those activities did not occur in New Jersey, and Plaintiff's opposition papers do not disagree.  *See* Defendant's Reply Br., Jan. 26, 2016, p. 4, D.E. 14.  But it is clear that the mortars were provided to Plaintiff, a New York company, to be used on two construction projects in Manhattan.  Because it is unclear at this time where the design, manufacture, marketing and distribution of the allegedly defective product occurred, but because we know it was not in New Jersey, the Court concludes that at this juncture, this factor weighs marginally in favor of New York.

### b.   Plaintiff's preference

Ordinarily, a plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).  Nevertheless, Plaintiff's choice is not given dispositive weight.  *Delta Airlines, Inc. v. Chimet, S.P.A., et al.*, 619 F.3d 288, 295–96 (3d Cir. 2010) (citing *Piper Aircraft Co. v. Reno*, 454 U.S. 235, 257 n.23 (1981).  Moreover, a plaintiff's preference deserves "significantly less weight" when the operative facts did not occur in the same jurisdiction and

---

[3] According to Plaintiff, Strongwall has claimed that a company called CGM originally supplied the mortars.  *See* Affidavit of Michael DiFonzo, Jan. 1, 2016, D.E. 6, ¶ 16.  CGM apparently is headquartered in Bethlehem, Pennsylvania.  *Id.*  Plaintiff also alleges that some of the material was supplied by Crossfield, which is headquartered in California.  Compl. ¶ 2 & DiFonzo Aff. ¶ 18.  But this information still does not establish where the mortars were designed and manufactured.

8

when plaintiff chooses a forum that is not its home state.  *Id.*; *Frato v. Swing Staging, Inc.*, 2011 U.S. Dist. LEXIS 91754, 2011 WL 3625064 (D.N.J. Aug. 17, 2011) ("But courts in this District often give less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state.").  In this case, because the Court has found that the operative facts occurred in New York and Plaintiff did not choose its home state forum, Plaintiff's preference should not be given great weight.

### c.      Convenience of the parties

This factor does not appear to favor either forum as Plaintiff is from New York but wants to litigate in New Jersey and Defendant is from New Jersey but seeks to litigate in New York.

### d.      Convenience of witnesses

Each party's employees appear to be located in the forum in which their employer is located.  The location of non-party witnesses, however, is a more pressing concern.  *See In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998).  It appears that none of the non-party witnesses reside in New Jersey and in all likelihood reside in New York as many are employed by a New York engineering firm.  Defendant's Br. in Support of Motion to Change Venue, Dec. 22, 2015, pp. 9-10, D.E. 4; Defendant's Reply Br., Jan. 26, 2016, pp. 5-6, 9, D.E. 14; Affidavit of Nicole Kokoletsos in Support of Motion to Change Venue, D.E. 14.  On balance, this factor favors transfer.

### e.      Location of books and records

The location of books and records is a neutral factor as there is no indication that the relevant records could not be produced in either district.  *See Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2009 WL 2255727, at *4 (D.N.J. July 27, 2009) ("The location of the disputed

records is also neutral since there is nothing to suggest that the records, which are admittedly in electronic form, cannot be easily transmitted.").

### f.    Enforceability of judgment and administrative difficulty

These factors favor neither forum.

### g.    Practical considerations, local interest, public policies, and familiarity with applicable law

While both districts have an interest in resolving a dispute involving a resident business, "[w]hen an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale where it may be a matter of local attention, rather than in a remote location where it will be learned of only by report." *Coppola v. Ferrellgas*, 250 F.R.D. 195, 201 (E.D.Pa.2008). CCM argues that it will be easier for this Court to apply New Jersey law, but federal courts are accustomed to applying the law of various states, and this factor has little weight.

Finally, the Court finds that a New Jersey community would be unfairly burdened by jury service in this case. Because the 90 series product at issue was not used in New Jersey, the product did not fail and become defective here, and the project site are not located here, there is no dispute either local or significantly related to the New Jersey community. "[W]ithout a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 193 (3d Cir. 2008). Thus, on balance, this Court finds that this factor supports a transfer.

### h.    Balance of conveniences

Based upon the record, Defendant has demonstrated that the public and private factors in the aggregate support transferring this matter to the Southern District of New York. While

CCM's choice of forum is entitled to a modicum of deference, the balance of the *Jumara* factors weigh strongly in favor of transfer.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to change venue and transfer this matter to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  An appropriate Order accompanies this Opinion.


                                        **s/ Michael A. Hammer**
                                        **UNITED STATES MAGISTRATE JUDGE**


Dated: February 22, 2016